**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**NIKKI OKOZUBE,**

**Plaintiff,**

**v.** **Case No. 2:26-CV-233-SCD**

**GRAND GENEVA, LLC,**
**MARCUS HOTELS, INC.,** and
**MARCUS CORPORATION,**

**Defendants.**

---

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

---

Nikki Okozube worked in a customer service role, assisting with hotel reservations and customer care. *Whom* she worked for is at issue in this order. Okozube alleges that her employer violated the Americans with Disabilities Act by failing to accommodate her disability and retaliating against her for seeking accommodations. She says three related companies effectively functioned as one for employment purposes: Grand Geneva, LLC; Marcus Hotels, Inc.; and Marcus Corporation. Marcus Corporation is the parent company of Marcus Hotels, Inc., which in turn is the parent company of Grand Geneva, LLC. Marcus Corporation argues that it was not Okozube's employer under the ADA and asks the court to dismiss it as a defendant. Okozube disagrees. She says Marcus Corporation was directly involved in her treatment after her ADA request and therefore bears responsibility for the alleged violations. The question is whether Okozube has plausibly alleged that Marcus Corporation was her employer under the ADA.

## BACKGROUND

Nikki Okozube worked within the "Marcus Hotels & Resorts Structure" from September 2016 until her termination in 2026.[1] *See* Compl. 3, ECF No. 1; Pl.'s Resp. Br. Ex. E. She worked for nearly nine years without any disciplinary action. Compl. 5. In July 2025, Okozube requested accommodations under the ADA. *Id.* at 7. Okozube alleges that this request marked a change in how the defendants treated her.

After Okozube requested accommodations, the defendants required additional medical evidence. Compl. 5. They also imposed new restrictions on her work responsibilities and benefits. *Id.* They then investigated Okozube and disciplined her. *Id.* Okozube also alleges that the defendants began scrutinizing her work more closely. They issued attendance write-ups, mischaracterized her work, and changed long-standing policies. *Id.* at 5–6. Okozube says her manager was directed to lower her performance evaluation because of her ongoing dispute with the company. *Id.* at 6. The defendants also required her to attend regular "verbal" meetings despite medical evidence recommending that she limit verbal communication. *Id.* Okozube alleges that the resulting stress worsened her condition and caused functional decline. *Id.* at 7.

Okozube attributes many of the challenged actions to "Defendants" collectively. Compl. 4. Okozube identifies Grand Geneva, LLC, as her "payroll employer" and Marcus Hotels, Inc., as the hotel operator. *Id.* She states that Marcus Corporation administered benefits, reviewed ADA compliance, and oversaw employment investigations. *Id.* Okozube

---

[1] Under Federal Rule of Civil Procedure 12(b)(6), the court accepts the complaint's well-pleaded factual allegations as true. A plaintiff may also elaborate on the complaint's factual assertions in her response brief, so long as those assertions are consistent with the pleadings. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("In the district court, too, a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove.").

also alleges that human-resources personnel at Marcus Corporation reviewed the handling of her ADA disclosure and accommodation request. *Id.* at 5. She points to an email exchange with Marcus Corporation's chief human resources officer, Steve Martin (no, not that one), who stated that he had reviewed her submission and discussed the matter with Marcus Hotels personnel responsible for addressing her concerns. *See* Pl.'s Resp. Br. at 3.

Okozube also asserts that Marcus Corporation processed her employment-related benefits and reimbursement requests through its systems. *See id.* at 2–3. After her termination, an employee of Marcus Corporation came to her home to retrieve company equipment. *Id.* at 3. In short Okozube asserts that Marcus Corporation exercised centralized control over her employment.

Okozube later filed this action against Grand Geneva, Marcus Hotels, and Marcus Corporation, alleging ADA violations. Marcus Corporation now asks the court to dismiss the claims against it, arguing that it did not employ Okozube and therefore cannot be liable under the ADA. *See* Defs.' Mot., ECF No. 17.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" Fed. R. Civ. P. 8(a)(2). Each defendant must understand what it allegedly did wrong and why it may be liable. Because liability is personal, a complaint ordinarily may not rely on generalized, collective wrongdoing. *See Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Instead, the alleged wrong must be specific to each defendant, and the complaint must provide enough detail for each defendant to know what it is supposed to have done. *Id.*

The Rules of Civil Procedure provide a mechanism for testing whether a complaint satisfies the pleading requirement: a motion to dismiss for failure to state a claim. *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss for failure to state a claim, the . . . complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 821 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## DISCUSSION

Marcus Corporation argues that Okozube cannot proceed against it under the ADA because it was not her employer. Okozube disagrees, claiming that Marcus Corporation played *enough* of a role in her employment to be liable. Marcus Corporation may be responsible here in two relevant ways: (1) if it exercised sufficient control over Okozube's employment; or (2) if it directed the discriminatory conduct against Okozube. As currently pleaded, the complaint plausibly supports neither theory. I will therefore dismiss Marcus Corporation.

### I. ADA Requirements

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability," and from retaliating against an individual for engaging in activity protected by the Act. 42 U.S.C. §§ 12112(a), 12203(a). Okozube sues three related companies, and more than one may count as her "employer." But each can be liable only for its own wrongdoing. *See Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). Thus,

Okozube must plausibly allege she was "employed by" Marcus Corporation. *See* 42 U.S.C. § 12111(4).

## II. The Complaint Does Not Allege a Basis to Hold Marcus Corporation Liable

Ownership of one corporation by another does not, by itself, make the parent liable for the subsidiary's employment decisions.[2] *See Papa v. Katy Indus., Inc.*, 166 F.3d 937, 940–43 (7th Cir. 1999). Because affiliation alone is not enough, Okozube advances two theories to hold Marcus Corporation responsible under the ADA: Marcus Corporation was her employer because it exercised sufficient control over her employment; and Marcus Corporation directed the discriminatory act, practice, or policy that allegedly violated Okozube's rights under the ADA.

### A. The Complaint Does Not Allege that Marcus Corporation Exercised Sufficient Control Over Okozube's Employment

Whether Marcus Corporation was Okozube's employer does not turn on labels. Courts instead look to the circumstances surrounding the relationship to determine whether an employment relationship actually existed. *See Worth v. Tyer*, 276 F.3d 249, 263 (7th Cir. 2001). Otherwise, an entity could avoid employment-law obligations by supervising from the shadows while leaving the subsidiary as the employer in name only. *See Papa*, 166 F.3d at 941. Yet companies may operate through separate entities to limit liability, and the law generally respects that separation. The inquiry thus must distinguish between a parent that controls the employee and one that works in the background without such control.

Courts consider five factors in determining whether an employment relationship exists:

> (1) [T]he extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of

[2] Marcus Corporation is the parent of Marcus Hotels, Inc., which in turn is the parent of Grand Geneva, LLC.

> occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Worth*, 276 F.3d at 263 (quoting *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991)). Of those factors, the most important is the alleged employer's control over the worker. *Id.* To support her claim that Marcus Corporation was her employer, Okozube alleges that Marcus Corporation:

1) exercised centralized control over her benefits administration, ADA compliance, and employment investigations;
2) maintained the "Benefit Hub" through which she accessed benefits;
3) processed reimbursements;
4) employed corporate personnel who reviewed her accommodation request; and
5) sent a security person to collect company equipment from Okozube's house after she was terminated.

Even drawing inferences in Okozube's favor, the complaint does not allege that Marcus Corporation employed her. Okozube alleges no facts showing that Marcus Corporation controlled her work or how it should be performed. Nor does the complaint allege that Marcus Corporation hired, fired, or paid Okozube.

*Worth v. Tyer* illustrates the kind of control that can support an employment relationship. 276 F.3d 249, 264 (7th Cir. 2001). In that case, the defendants argued that the plaintiff's freedom to leave the office during the workday showed she controlled her own schedule. Yet the other facts pointed in a different direction. The plaintiff's supervisors set her

training schedule, directed which projects she worked on, required her to submit work for approval, and expected her to fill out the same timecards as other employees. *See id.*

Nothing comparable is alleged here. The complaint does not allege that Marcus Corporation set Okozube's schedule, directed what she must work on, reviewed any of Okozube's work product, or paid her wages. Okozube identifies the email from Marcus Corporation's chief human resources officer, Steve Martin, as the basis for her allegation that Marcus Corporation reviewed and endorsed the handling of her accommodation request, thus exercising control over her employment. Yet Martin stated that he reviewed her submissions and told her to direct her concerns to an employee of Marcus Hotels, Inc. That instruction cuts *against* an inference of control: Martin pointed Okozube to Marcus Hotels, Inc., rather than taking responsibility for the matter himself.

Okozube's remaining allegations show general involvement, not control. Marcus Corporation maintained the "Benefit Hub," processed her reimbursements, and collected the equipment from her home. Yet performing administrative functions is not the same as exercising control over an employee. *See Papa*, 166 F.3d at 942 (explaining that affiliated companies may integrate functions such as pensions, legal services, and payroll to achieve economies of scale without becoming a single employer). The complaint shows that Marcus Corporation was involved in some aspects of Okozube's employment, but administrative involvement alone does not plausibly show that it controlled her employment. *See id.*

The complaint likewise alleges little that connects Marcus Corporation to the remaining *Knight* factors, and none meaningfully changes the analysis.

### B. The Complaint Does Not Allege that Marcus Corporation Directed the Challenged Conduct

An affiliated corporation may also be liable if it directed the discriminatory act, practice, or policy the plaintiff challenges. *Worth*, 276 F.3d at 260. That is, liability attaches when the parent company is the "real decision maker." *See Papa*, 166 F.3d at 940–41. Okozube argues that Marcus Corporation directed the conduct underlying her ADA claims.

The chief human resources officer's email does not plausibly show that Marcus Corporation directed the challenged conduct. Okozube alleges that Marcus Corporation "reviewed and endorsed" her ADA disclosure and accommodation request. Compl. 5. Okozube again appears to be referring to an email from Marcus Corporation's chief human resources officer, Steve Martin, stating that he had "reviewed" her situation and believed it "ha[d] been handled appropriately." Pl.'s Resp. Br. Ex. A.

At most, Martin's email reads as a review of decisions already made, not as evidence that he made or directed them. In his response, Martin told Okozube that the matter had already been handled properly and counseled her to continue working with Marcus Hotels personnel. Reviewing a decision is different from making or directing it. Martin also said he "fe[lt] that a request for additional medical documentation [was] appropriate." *Id.* In context, Martin's response suggests an action already taken, that is, a request for more information from Okozube, rather than a request in the first instance. Had Martin been initiating the request, one would expect him to direct that additional documentation be sought. The email therefore suggests that Martin became involved after Okozube raised concerns about the handling of her accommodation request, not that he had directed that handling from the outset.

Even if "endorsed" is read more broadly to suggest that Martin ratified actions already taken, that allegation still does not plausibly show that Marcus Corporation directed those

actions in the first instance. At most, the email shows after-the-fact awareness and approval, not participation in the underlying accommodations process. Absent some showing that Martin's involvement went beyond post-hoc sign-off, "endorsed" does not support an inference that Marcus Corporation itself was the real decision-maker.

Nor does Marcus Corporation's alleged "ADA compliance review" show that it directed the challenged conduct. Compl. 4. In *Bright v. Hill's Pet Nutrition, Inc.*, the Seventh Circuit explained that a parent company does not become responsible for its subsidiary's employment practices merely because it creates compliance policies for its subsidiaries and is kept informed about workplace problems. 510 F.3d 766, 771 (7th Cir. 2007). The court reasoned that a parent company may take steps to ensure its subsidiaries comply with the law and to protect itself without thereby assuming responsibility for the subsidiary's allegedly discriminatory conduct. *See id.* Reviewing ADA compliance does not reasonably imply that Marcus Corporation enacted the challenged policy or directed the action that allegedly led to Okozube's discrimination and retaliation.

In short, the complaint does not plausibly allege that Marcus Corporation decided whether to accommodate Okozube or that it directed the alleged retaliation.

### C. Collective Allegations Against "Defendants" Do Not Link Marcus Corporation to the Challenged Conduct

Okozube's collective allegations do not cure the complaint's failure to identify what Marcus Corporation allegedly did. In her complaint, Okozube states that the three defendants—Grand Geneva, LLC, Marcus Hotels, Inc., and Marcus Corporation—are "collectively referred to herein as 'Defendants.'" Compl. 4. She then attributes several actions to the "Defendants." First, she alleges Defendants restricted her use of accrued paid time off. Second, they initiated an investigation and issued her first disciplinary action in nearly nine

years. Third, Defendants scrutinized and inaccurately characterized her work. Fourth, Defendants issued attendance-related write-ups and other adverse performance actions, including directing her manager to lower her performance evaluation. Fifth, they required biweekly verbal meetings despite medical recommendations and failed to accommodate her disability. The difficulty is that referring to three separate corporations as "Defendants" does not tell me which corporation took each action.

A plaintiff cannot lump multiple defendants together without identifying what each one allegedly did. In *Bank of America, N.A. v. Knight*, the plaintiff alleged that "the defendants looted the corporation" but failed to identify which defendants committed which acts. 725 F.3d at 818. The court held that the complaint failed to meet the pleading standards because each defendant was entitled to know which conduct the complaint attributed to it. *Id.* The court stressed that "[l]iability is personal" and barred pleading based on joint liability when the complaint did not connect particular defendants to particular misconduct. *Id.*

The pleading standard requires notice to each defendant. Here, I cannot reasonably infer that every defendant joined in every harmful act simply because the complaint uses the shared term "Defendants." Okozube thus does not supply the missing facts linking Marcus Corporation to the challenged conduct. Marcus Corporation will therefore be dismissed as a defendant.

Given the above discussion, the court is skeptical that an amended complaint could cure any of the defects identified above. In her briefing, the plaintiff has not identified any additional facts that would create liability on the part of Marcus Corporation, nor has she explained why adding still another defendant to this action would be fruitful. That said, if the plaintiff believes there are additional facts warranting consideration, she may file a motion to

amend the complaint within 30 days. *Runnion v. Girl Scouts of Greater Chicago,* 786 F.3d 510 at 519 (7th Cir. 2015) (Generally, "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.") If the defendant believes such complaint suffers from the same defects as the original, it need not undertake extensive briefing in support of a motion to dismiss.

## CONCLUSION

Marcus Corporation must be dismissed as a defendant because the complaint does not sufficiently allege it was Okozube's employer. Accordingly, I **GRANT** Marcus Corporation's motion to dismiss, ECF No. 17. If the plaintiff believes there are other facts suggesting that the parent company is a proper defendant, she may move to amend the complaint within 30 days.

**SO ORDERED** this 7th day of October, 2026.

Stephen C. Dries

STEPHEN C. DRIES
United States Magistrate Judge